### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HALL & ASSOCIATES, <br><br>     Plaintiff, <br><br>     v. <br><br> U.S. ENVIRONMENTAL PROTECTION AGENCY, <br><br>     Defendant. | Civil Action No. 15-1055 (JMC) |

### <u>MEMORANDUM OPINION</u>

Plaintiff Hall & Associates (H&A) brought this action against the United States Environmental Protection Agency (EPA) pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, seeking records related to the "EPA's position on the national applicability of the Eighth Circuit decision in *Iowa League of Cities v. EPA*, 711 F.3d 844 (8th Cir. 2013)." ECF 1-3 at 2–4.[1] After years of litigation and a remand from the D.C. Circuit, the EPA released all disputed documents, and this Court dismissed the case as moot. ECF 79 at 2; September 5, 2020 Minute Order. H&A now moves for attorneys' fees and costs. ECF 88. After reviewing the record and applicable case law, the Court agrees that H&A is entitled to some compensation, but not for the full amount of fees requested. Accordingly, for the reasons set forth below, the motion is **GRANTED IN PART** and **DENIED IN PART**. The Court awards H&A $132,531.51 for its attorneys' fees using the rates set forth in the United States Attorney's Office (USAO) Matrix, and

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

$18,566.81 for its out-of-pocket costs. The fee award represents a significant reduction of the seven-figure award H&A seeks but is warranted for the reasons that will be described in greater detail below.

## I.      BACKGROUND

### A.  Factual Background

The Court gleans the following from the record. On March 25, 2013, the Eighth Circuit addressed the legality of a pair of EPA rules on water treatment practices relevant to the Clean Water Act's National Pollution Discharge Elimination System (NPDES). *See generally Iowa League of Cities v. EPA*, 711 F.3d 844 (8th Cir. 2013). The EPA, through two letters, had announced policies placing limitations on the use of both (1) "mixing zones," which allow for a higher concentration of pollutants at the immediate point of discharge so long as they become sufficiently diffused when moving into a larger body of water, and (2) "blending," whereby a portion of water bypasses the typical secondary treatment process but then joins the final combined stream before discharge. *Id.* at 857–60. Represented by H&A, a "highly specialized [firm] that focuses on complex Clean Water Act matters," the Iowa League of Cities challenged the rules under the Administrative Procedure Act (APA). ECF 88-3 ¶¶ 1, 4. The Eighth Circuit vacated both rules as procedurally improper and further held that the blending rule was substantively improper because it exceeded the EPA's statutory authority. *Iowa League*, 711 F.3d at 875–78.

The EPA started discussing how to respond to the *Iowa League* decision as early as July 2013. ECF 44-3 at 12; ECF 88-2 at 9. In August 2013, the EPA considered the pros and cons of seeking Supreme Court review of the Eighth Circuit's judgment. ECF 44-3 at 14–15. The EPA identified the ability to "formally or informally acquiesce and thereby limit the effect of the decision to the Eighth Circuit" as a benefit of choosing to not "seek cert." *Id.* at 15. The EPA

declined to ask the Department of Justice (DOJ) to appeal *Iowa League* by its internal deadline of August 20, 2013, *see id.* at 12, and did not petition for a writ of certiorari.

With the Eighth Circuit's judgment in place, the EPA continued analyzing whether it would adhere to the *Iowa League* decision outside the jurisdiction of the Eighth Circuit. In late October 2013, the EPA reviewed guidance it received "earlier th[at] year" from the DOJ regarding the possibility of "non-acquiescence," which stated that there was "pretty sound support for the proposition that EPA is not bound to follow Iowa League's reasoning in agency actions that we either know would be reviewed outside the 8th Circuit . . . or where the 8th Circuit is only one of many circuits that could properly hear a judicial challenge." ECF 44-3 at 41. This document also observed that the EPA "should expect to be subject to judicial challenge" if it were to "express [its] views in written form" and "caution[ed] that any formal expression of non-acquiescence runs the risk of a challenge." *Id.*

Starting on or around November 13, 2013, EPA officials made a series of public statements that "the [*Iowa League*] ruling will only be binding to the 8th Circuit States," while acknowledging that "they d[idn't] have everything figured out yet." ECF 44-3 at 59–60 (newsletter from Nebraska Water Environment Association reporting on the "7th Annual 4-State Governmental Affairs Meeting"); *see also* ECF 44-4 at 9 (newsletter from Missouri Public Utility Alliance reporting that "EPA Headquarters' Associate Counsel Neug[e]boren stated repeatedly that the decision was effective in this region (covered by the Eighth Circuit), but that it was not going to be extended out of this regional area"). Similar language appeared in the EPA's written "Desk Statement" (*i.e.*, a press release) given to Bloomberg News on November 19, 2013, which stated that "[t]he Eighth Circuit's interpretation in [*Iowa League*] of EPA's regulations . . . is legally binding within the Eighth Circuit," but that "[o]utside of the Eighth Circuit, EPA will continue to work with States

and communities . . . consistent with the Agency's existing interpretation of the regulations." ECF 44-4 at 41, 76. In a different Bloomberg article published the next day, an EPA official was quoted stating once again that "[o]utside the Eighth Circuit, [the EPA] will be looking on a case-by-case [basis] at situations in particular communities to see what makes sense" and "that the *Iowa League* ruling is 'not binding' outside of the Eighth Circuit." ECF 44-4 at 43.

H&A, now plaintiff in this action, filed multiple FOIA requests related to the EPA's application of *Iowa League*. *See, e.g.*, ECF 44-3 at 20 (EPA FOIA response to H&A's October 25, 2013 request and December 2, 2013 amendment). At issue in this case is the November 13, 2014 FOIA request that Mr. John C. Hall (founder, president, and senior attorney of H&A) filed in his capacity as the Executive Director of the Center for Regulatory Reasonableness, which sought records related to the EPA's public statements in November 2013 regarding the "EPA's position on the national applicability of the Eight[h] Circuit decision in *Iowa League*[.]" ECF 1-3 at 3, 7-8. The EPA identified ten responsive documents, which were created between November 14, 2013 and November 26, 2013: Documents 1, 1(a), 1(b), 2, 3, 4, 4(a), 4(b), 5, and 6. ECF 15-12. The documents consist of talking points, memoranda, and emails shared amongst EPA officials, all of which address the EPA's response to the *Iowa League* decision in and outside of the Eighth Circuit. *See generally* ECF 112. The EPA released Document 1 in full and withheld the remaining nine in full or in part, justifying the withholdings under FOIA Exemption 5, ECF 15-12, which protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Specifically, the EPA claimed the deliberative-process privilege over all nine documents, and the attorney–client privilege as to Documents 1(b), 2, 3, and 5. ECF 15-12.

### B. Procedural Background

H&A filed suit against the EPA on July 6, 2015, challenging the EPA's invocation of the attorney–client and deliberative-process privileges. ECF 1 ¶ 1. Through multiple rounds of briefing of cross motions for summary judgment, the EPA's central argument for withholding relied on the deliberative-process privilege, which shields from disclosure predecisional and deliberative documents that reflect advisory opinions, recommendations, and deliberations that eventually lead to official governmental decisions and policies. *See* ECF 15 (EPA's first motion for summary judgment); ECF 43 (EPA's second motion for summary judgment); ECF 54 (EPA's opposition to Plaintiff's second motion for summary judgment); ECF 55 (EPA's reply in support of its second cross motion for summary judgment); *see also* ECF 10; ECF 16; ECF 44; ECF 45; ECF 57. The EPA argued that each document was deliberative in character and necessarily predecisional because, even at the time of litigation, "the EPA ha[d] not made a decision to reject the Eighth Circuit decision in *Iowa League of Cities*." ECF 15 at 31; *see also* ECF 43-12 at 12 ("EPA has not, to date, decided whether and to what extent to follow *Iowa League of Cities* decision outside the Eight[h] Circuit."); ECF 54 at 20 (same); ECF 54-2 ¶ 18 (same). H&A argued that the EPA had decided *not* to follow the *Iowa League* decision outside the Eighth Circuit (*i.e.*, the Agency adopted a policy of "nonacquiescence" to the ruling) as early as August 2013, *see supra* Section I.A, rendering all documents postdecisional and thus ineligible for the deliberative-process privilege. ECF 44-1 at 26–27.

The Court partially granted and partially denied these cross motions. *See Hall & Assocs. LLC v. EPA* (*Hall III*), 315 F. Supp. 3d 519, 526 (D.D.C. 2018).[2] Rejecting the EPA's contention

---

[2] The Court will reference four decisions that share the title "*Hall & Associates v. EPA*." These decisions were issued in 2011, 2016, 2018, and 2020, and their shorthand form reflects their chronological order.

that no nonacquiescence decision had been made but also disagreeing with H&A's asserted timeline, the Court found that the November 19, 2013 press release constituted "a formal announcement of nonacquiescence" with *Iowa League*. *Id.* As such, Document 6, which was generated after the press release, was deemed postdecisional and could not be covered by the deliberative-process privilege. *Id.* at 537. The Court then concluded that Document 4 and portions of Documents 1(a) and 1(b), although predecisional, were not deliberative and similarly could not be shielded by that privilege. *Id.* at 538–39. The remaining withholdings were deemed valid. *Id.*

H&A appealed several rulings of this Court (including the denial of H&A's motions for additional discovery, to strike, and to amend), but principally challenged the entry of summary judgment. The D.C. Circuit, while finding no merit in H&A's secondary challenges, held that summary judgment for the EPA was improper and vacated this Court's judgment. *Hall & Assocs. v. EPA* (*Hall IV*), 956 F.3d 621, 633–34 (D.C. Cir. 2020). On appeal, the EPA chose to defend this Court's determination that the EPA made a nonacquiescence decision on November 19, 2013, abandoning its prior position that "no alleged 'nonacquiescence decision' was [ever] made." *Compare id.*, *with* ECF 54-2 ¶ 17. With "no dispute that the EPA's position in the Desk Statement . . . [wa]s a nonacquiescence decision," that left only the "critical question" of timing, *i.e.*, whether the EPA "carried its burden of establishing that its nonacquiescence decision was reached *only after* all of the documents at issue here were created." *Hall IV*, 956 F.3d at 630. The Court of Appeals held that the EPA could not, as a matter of law, defend November 19, 2013 as the date of nonacquiescence in part because "the EPA submitted little to no evidence speaking directly to the timing question, and no direct evidence at all that the date was November 19th." *Id.* at 631. "At bottom, now that the EPA accept[ed] the district court's legal holding that it made a

nonacquiescence decision in November 2013, the summary judgment record le[ft] materially disputed and unanswered when exactly that decision was made." *Id.* at 632.

On remand, this Court requested additional briefing to determine "the standards that this Court should use to determine when an agency decision is internally 'made' or 'adopted'" and advised that it would "seek input from the parties concerning what evidence exists . . . that can be gathered and submitted during a potential evidentiary hearing or trial pertaining to the timing of the EPA's non-acquiescence decision in this case." July 14, 2020 Minute Order. Rather than submitting additional briefing, the EPA voluntarily released all disputed documents to H&A, and the Court dismissed this case as moot. ECF 79 at 2; September 5, 2020 Minute Order.

H&A now moves for $1,514,056.66 in fees and costs. ECF 101 at 1. The EPA opposes, arguing that H&A is not entitled to fees and that the amount requested is unreasonable. ECF 93 at 6. In fact, the EPA argues that the request "is so grossly unreasonable that the Court should deny it entirely on this basis alone." *Id.* at 23.

## II.    LEGAL STANDARD

FOIA provides that "a court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in [FOIA litigation] in which the plaintiff has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). This statutory provision yields a two-prong inquiry: fee "eligibility" and fee "entitlement." *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 524 (D.C. Cir. 2011). The eligibility prong asks whether a plaintiff has "substantially prevailed" by obtaining an official disclosure order from a court or by causing the government to release the withheld documents. *Id.* at 524–25; *see* 5 U.S.C. § 552(a)(4)(E)(ii). The entitlement prong asks whether a plaintiff *should* receive fees, which requires courts to consider (at least) the following four factors: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the

agency's withholding of the requested documents." *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008). The evaluation and balancing of the entitlement factors are left to the discretion of the district court. *See Morley v. CIA*, 894 F.3d 389, 391 (D.C. Cir. 2018). If a plaintiff is both eligible for and entitled to fees, "the court must assess whether the amount requested is reasonable" and fix an appropriate award. *See Urban Air Initiative, Inc. v. EPA*, 442 F. Supp. 3d 301, 310 (D.D.C. 2020) (citing 5 U.S.C. § 552(a)(4)(E)(i)).

## III.   ANALYSIS

The Court finds that H&A is both eligible and entitled to fees but will not award the full amount requested. First, the record reflects, and the Parties do not dispute, that H&A substantially prevailed in this litigation and is therefore eligible for fees. Second, the Court finds that the fee entitlement factors favor H&A, albeit slightly. While H&A had a private and commercial interest in its FOIA request, the request had at least some public value in its potential to uncover useful information regarding the management of essential local government services (namely, water treatment). Additionally, the Court finds that EPA's basis for withholding, which the EPA eventually abandoned on appeal, helped prolong this litigation, and was not entirely reasonable. Finally, the Court considers the reasonableness of the award requested. Because H&A has not provided sufficient evidence to justify its proposed market rates nor to establish that this litigation reasonably required all 2,600 hours of work that H&A expended, and because the balance of factors tip only slightly in its favor, the appropriate award for H&A is substantially less than what H&A requests.

### A.  Fee Eligibility

A FOIA plaintiff may substantially prevail in litigation in two ways. First, the plaintiff can obtain a judicial order that offers relief on the merits and "change[s] the 'legal relationship between the plaintiff and the defendant.'" *Davy v. CIA*, 456 F.3d 162, 165 (D.C. Cir. 2006) (quoting

*Buckhannon Bd. of Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 (2001)); 5 U.S.C. § 552(a)(4)(E)(ii)(I). Alternatively, the plaintiff's action may serve as a "reasonably necessary" catalyst that "substantially causes" the agency to release the requested documents prior to a final judgment. *Chesapeake Bay Found., Inc. v. U.S. Dep't of Agric.*, 11 F.3d 211, 216 (D.C. Cir. 1993); 5 U.S.C. § 552(a)(4)(E)(ii)(II).

The Parties do not dispute that H&A has substantially prevailed in this litigation and is therefore eligible for fees. The Court agrees that H&A is eligible, by way of both "judicial order" and the EPA's "voluntary or unilateral change in position." 5 U.S.C. § 552(a)(4)(E)(ii). This Court's March 31, 2018 Order granted relief to H&A by requiring the disclosure of two documents in full and two other documents in part, which the EPA acknowledges is "sufficient to make Plaintiff eligible for attorney's fees." ECF 93 at 10. Additionally, the record reflects, and the EPA does not seem to dispute, that this litigation substantially caused the Agency to release the documents it originally withheld. *See id.* at 9 ("Based on the contentious and litigious history of the case . . . EPA elected to make a discretionary release of the documents."). On either basis, it is clear that H&A is eligible for fees.

### B.  Fee Entitlement

With H&A's fee eligibility established, the Court now turns to fee entitlement. After considering the relevant entitlement factors—*i.e.*, the public benefit of H&A's case, the commercial benefit to H&A and its interest in the records, and the reasonableness of the EPA's withholding—the Court finds that H&A is entitled to recover reasonable expenses it incurred litigating this matter.

### 1.  *Public Benefit of H&A's Request*

The public-benefit entitlement factor asks whether the information sought in the FOIA action is "likely to add to the fund of information that citizens may use in making vital political

choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995). It is often stated that this factor requires consideration of both "the potential public value of the information sought" as well as "the effect of the litigation." *See, e.g.*, *Dorsen v. SEC*, 15 F. Supp. 3d 112, 121 (D.D.C. 2014). The latter inquiry, however, is "properly understood as asking simply whether the litigation has caused the release of the requested documents." *Morley v. CIA*, 810 F.3d 841, 844 (D.C. Cir. 2016). "Lest there be any uncertainty," the D.C. Circuit has "clarif[ied] that the public-benefit factor requires an *ex ante* assessment of the potential public value of the information requested, with little or no regard to whether any documents supplied prove to advance the public interest." *Id.* The higher the probability that the request will generate "useful new information about a matter of public concern . . . the more potential public value a request has." *Id.*

The Court finds that H&A's request had potential public value. When a federal agency has its policies vacated by a federal court, regulated entities have an interest in understanding how their legal obligations may change. When the regulated entities are local government agencies and the legal obligations relate to essential services for the community, there is public interest in having clear information about how these entities must discharge their public-facing duties. Here, H&A sought information relevant to EPA's stance on the "national applicability" of the Eighth Circuit's ruling in *Iowa League*, a federal court of appeals decision that invalidated two EPA rules governing how local water treatment facilities can and cannot operate. Because a change in law governing municipalities' water treatment operations had the potential to cause major sanitary, environmental, and economic consequences for communities nationwide, information about if, how, and where those consequences would indeed be felt was a matter of concern to the public writ large. *See* ECF 88-2 at 45–46 (letter from U.S. Conference of Mayors discussing impact of EPA policy). Looking at H&A's request *ex ante*, it was probable that—even if aspects of H&A's

request related to already-public statements by the EPA—the talking points, presentations, and other records created pursuant to EPA's nonacquiescence decision would reveal useful new information about this matter of public concern.

The EPA argues that the disclosed documents do not "shed[] light on the working law of the Agency" nor "add to the fund of information that citizens may use in making vital political choices" either because "these documents are drafts," they contain "merely factual and historical information," or they pertain only to "highly particularized interactions" within the EPA. ECF 93 at 13–14. But, as stated above, the public-benefit inquiry focuses on the potential value of the information sought when considering the request *ex ante*, not whether the disclosed documents in fact revealed what the requester hoped they would. "[I]f it's plausible *ex ante* that a request has a decent chance of yielding a public benefit, the public-benefit analysis ends there." *See Morley*, 810 F.3d at 844. The Court finds H&A's FOIA request passes this test. So, the public-benefit factor favors awarding fees.

### 2.   *H&A's Interest in the Records*

The second and third entitlement factors—the commercial benefit to the plaintiff and plaintiff's interest in the records—are "closely related and often considered together" and "assess whether a plaintiff has 'sufficient private incentive to seek disclosure' without attorney's fees." *Kwoka v. IRS*, 989 F.3d 1058, 1064 (D.C. Cir. 2021). FOIA's fee provision was intended "to remove the incentive for administrative resistance to disclosure requests based not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation." *Morley*, 810 F.3d at 844. As such, fees are less appropriate where the plaintiff seeks to further a personal interest or obtain a commercial benefit through their FOIA litigation as "there is already sufficient motivation for the claimant to bring the suit without the promise of attorneys' fees." *Dorsen*, 15 F.

Supp. 3d at 122–23 (D.D.C. 2014). For example, these factors weigh against awarding fees when a plaintiff seeks documents that will facilitate their "efforts in ongoing civil litigation." *Id.* at 123. There need not be evidence of direct financial gain either; a requester's private interest in enhancing their ability to counsel their paying clients or attract new business could be considered "sufficient to insure the vindication of [FOIA] rights" without fees. *See Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979).

The Court finds that H&A had a private, commercial interest in its FOIA request and subsequent litigation. H&A is a private law firm "whose primary purpose is to serve as a regulatory consultant and/or special counsel to municipal and private entities regarding environmental matters." ECF 1 ¶ 10. By Mr. Hall's own admission, H&A submitted its FOIA request to "assist [its] clients . . . in the resolution of ongoing regulatory, NPDES[,] and enforcement disputes involving the use of blending," including "litigation [that] was pending . . . when the instant FOIA request was filed." ECF 88-3 ¶ 5; *see also id.* ("The release of the requested records was important to the resolution of these client matters."). That statement alone indicates that H&A's FOIA request served to both (1) further its private, pecuniary interests as a for-profit, professional services firm by enhancing its ability to counsel its clients and (2) help H&A represent its clients in other pending litigation. As a court in this District has found in similar circumstances, the purpose of H&A's request was "both commercial and private." *Hall & Assocs. v. EPA* (*Hall I*), No. 10-CV-228, 2011 WL 13373978, at *4 (D.D.C. Nov. 4, 2011) (finding that H&A's request for "clarification of policy positions from the EPA regarding blending" arose from a "financially based" interest in "properly inform[ing] [H&A's] clients of their Clean Water Act responsibilities"); *see also Terris, Pravlik & Millian, LLP v. Ctrs. for Medicare & Medicaid Servs.*,

794 F. Supp. 2d 29, 38–39 (D.D.C. 2011) (finding law firm had commercial interest when it sought information "it needed in the representation of its client" in a different matter).

The Court is not persuaded by H&A's arguments to the contrary. H&A asserts that it submitted its request and litigated this action "on behalf of several municipalities" who "do not have any direct commercial interest in the FOIA request" and "simply wanted to know how federal law would be applied to their communities and members." ECF 88-1 at 27–28. But the "several municipalities" H&A alludes to are not named in H&A's FOIA request nor party to the current litigation. The only other entity explicitly named—and even still only appearing in the first letter regarding the November 13, 2014 FOIA request—is the Center for Regulatory Reasonableness (CRR). ECF 1-3 at 2; *see id.* at 27 (H&A appeal of FOIA decision stating that "H&A submitted the Request to EPA Headquarters," with no further mention of CRR). But CRR is also "a domestic for-profit corporation," specifically comprising a "multi-sector coalition of [*both*] municipal and industrial entities from across the United States." Petition for Rev. at 5, *Ctr. for Regul. Reasonableness v. EPA*, 849 F.3d 453 (D.C. Cir. 2017) (No. 14-1150). In any case, any alleged non-commercial interests of H&A's clients do not eliminate H&A's separate and plainly commercial interest in counseling and representing those clients in exchange for compensation. H&A's interests weigh against awarding fees.

### 3.  Reasonableness of the EPA's Withholding

The final entitlement factor evaluates whether the agency's opposition to disclosure "had a reasonable basis in law." *Tax Analysts v. DOJ*, 965 F.2d 1092, 1095 (D.C. Cir. 1992). The relevant question "is not whether the agency's legal and factual positions were correct" but "whether the agency's positions were reasonable." *Morley*, 894 F.3d at 393. That said, it is not the plaintiff's burden to "affirmatively show[] that the agency was unreasonable." *Davy*, 550 F.3d at 1163. Rather, the agency must demonstrate that it had "any colorable or reasonable basis for not

disclosing the material until after [plaintiff] filed suit." *Id.*; *see also Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) ("FOIA . . . mandates that an agency disclose records on request, unless they fall within one of nine exemptions."). Where "the Government's position is correct as a matter of law, that will be dispositive." *Davy*, 550 F.3d at 1162. Where its position is instead only "founded on a colorable basis in law, that will be weighed along with other relevant considerations." *Id.* In general, "the reasonable-basis-in-law factor is intended to weed out those cases in which the government was 'recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'" *Tax Analysts*, 965 F.2d at 1097.

The EPA, both in its initial FOIA response and throughout this litigation, invoked FOIA Exemption 5 to justify its full or partial withholding of nine documents. Exemption 5 encompasses "the deliberative-process privilege [and] the attorney-client privilege," *Nat'l Assoc. of Crim. Def. Laws. v. DOJ*, 844 F.3d 246, 249 (D.C. Cir. 2016), and the EPA asserted both in this case. The EPA claimed the deliberative-process privilege over all documents at issue and the attorney-client privilege over a select few. The Court will briefly address the EPA's reliance on the attorney-client privilege and then discuss the deliberative-process privilege.

The EPA had at least a reasonable basis in law to assert the attorney–client privilege over the information it withheld under that exemption. "Exemption 5 protects, as a general rule, materials which would be protected under the attorney–client privilege." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980). To invoke this privilege, the agency must show that the withheld document or information constitutes a communication that (1) was both intended to be and actually kept confidential, (2) included a lawyer pursuant to a professional relationship, and (3) had the primary purpose of securing an opinion of law, legal services, or assistance in a legal proceeding. *See In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998); *Mead*

*Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 252–54 (D.C. Cir. 1977). This Court previously stated, without directly ruling on the issue, that it "believe[d] that the attorney–client privilege clearly applies to" Documents 1(b), 2, 3, and 5. *Hall III*, 315 F. Supp. 3d at 540–41 & n.6. The Court is inclined to reaffirm its prior statement since these documents include some communications between EPA employees and EPA attorneys discussing legal issues in a context that suggests an expectation of confidentiality. However, because the EPA asserted the attorney-client privilege over only a subset of the documents withheld, the inquiry cannot end there.

Turning to the central dispute in this case, the Court will now assess whether the EPA was reasonable in asserting the deliberative-process privilege over all disputed documents. This privilege shields "documents reflecting advisory opinions, recommendations[,] and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Loving v. Dep't of Def.*, 550 F.3d 32, 38 (D.C. Cir. 2008). To qualify for the deliberative-process privilege, an intra-agency communication must be both predecisional and deliberative. *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015). The predecisional requirement is temporal: the document must be "generated *before* the adoption of an agency policy." *Coastal States*, 617 F.2d at 866 (emphasis added). The deliberative requirement is qualitative: the document must be "part of the agency give-and-take—of the deliberative process—by which the decision itself is made." *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975). The Court acknowledges that the EPA acted reasonably insofar as the documents appear "deliberative" in nature. *See*, *e.g.*, ECF 112-1 at 1–4 (Document 1(a) consists of talking points—shared amongst various EPA officials—regarding the EPA's response to *Iowa League* and that appear to contain at least some handwritten edits). These intra-agency communications arguably reflect "draft

documents" consisting of the "personal opinions of the writer," *Coastal States*, 617 F.2d at 866, intended "to facilitate or assist development of the agency's final position," *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014). But this does not resolve the "crucial" question of whether these documents were generated *before* the EPA made its nonacquiescence decision, *Hall III*, 315 F. Supp. 3d at 534, and thus whether it was reasonable for the EPA to withhold all of them as "predecisional."

"A document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made." *Petrol. Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975)). The purpose of the executive privileges embodied by Exemption 5 is to "ensur[e] that persons in an advisory role [are] able to express their opinions freely to agency decision-makers without fear of publicity," *Ryan v. DOJ*, 617 F.2d 781, 789 (D.C. Cir. 1980), but "it is difficult to see how the quality of a decision will be affected by communications with respect to the decision occurring after the decision is finally reached," *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). "Accordingly, to approve exemption of a document as predecisional, a court must be able 'to pinpoint an agency decision or policy to which the document contributed.'" *Senate of P.R. v. DOJ*, 823 F.2d 574, 585 (D.C. Cir. 1987). This factual question of timing is "material" and often "dispositive" in deciding whether documents are eligible for withholding under the deliberative-process privilege. *Hall IV*, 956 F.3d at 630; *see also Hall III*, 315 F. Supp. 3d at 543 ("[T]he question of whether the EPA is withholding documents that represent the agency's working law with respect to nonacquiescence necessarily turns on the 'linchpin issue' of *when* the EPA made its nonacquiescence decision[.]"). While it is clear to the

16

Court that the EPA overstated its position on this critical question of timing, it is also clear that this question is not easily resolved in either Party's favor.

In its initial FOIA response, and through several years of litigation, the EPA argued that no nonacquiescence decision had ever been made, which rendered every document regarding the agency's national approach to *Iowa League* predecisional. At the time of its first summary judgment brief in early 2016, the EPA asserted that it still "ha[d] not made a decision to reject the Eighth Circuit decision in *Iowa League of Cities*." ECF 15 at 29. In its second round of summary judgment briefing, matching the language in its Vaughn Index, the EPA relied on declarations from EPA Official Deborah Nagle stating that the "EPA has not, to date, decided whether and to what extent to follow *Iowa League* outside the Eighth Circuit." ECF 54-1 ¶ 5. The EPA also disputed several of H&A's factual assertions on the basis that "no alleged 'nonacquiescence decision' was made." ECF 54-2 ¶ 17.

Neither this Court nor the D.C. Circuit agreed. The EPA's claims were found to be "bald contention[s]" that "d[id] not follow from the record." *Hall III*, 315 F. Supp. 3d at 536; *see also Hall IV*, 956 F.3d at 630 ("[T]here is no dispute that the EPA's position in the Desk Statement . . . is a nonacquiescence decision."). The record instead established that, by November 19, 2013 at the latest, the EPA *had* adopted a position on the national applicability of *Iowa League*, which was as follows: the decision was "legally binding within the Eighth Circuit," but "[o]utside of the Eighth Circuit, EPA w[ould] continue to work with States and communities . . . consistent with the Agency's existing interpretation of the regulations." ECF 44-4 at 41, 76 (EPA Desk Statement). Though the EPA may have "failed to appreciate" it, its choice to reserve the right to not follow *Iowa League* outside the Eighth Circuit was, by definition, a nonacquiescence decision. *Hall III*, 315 F. Supp. 3d at 545. As such, even if its "no decision

rendered" position was "earnestly held," *id.*, it was not reasonable for the EPA to claim it still had not made a decision even after issuing its Desk Statement, and therefore the EPA did not act reasonably to the extent it claimed the deliberative-process privilege over any document generated after November 19, 2013.

However, insofar as the EPA was unreasonable to withhold documents generated after its Desk Statement, only one document meets that description—so what of the remaining eight? ECF 112-1 at 19 (Document 6 dated November 26, 2013). The other withheld documents are dated between November 15 and November 18, 2013, just a few days before the Desk Statement. ECF 112-1 at 2–18. They do appear "deliberative" in nature, *supra* at 14–15, but is it obvious that they were created before the EPA made its nonacquiescence decision? That issue continues to eschew resolution. As the D.C. Circuit explained: "That the EPA erred in claiming a decisional date of 'never' does not, by itself, establish that all of the documents were *post*decisional." *Hall IV*, 956 F.3d at 633 (emphasis added). Indeed, the D.C. Circuit's basis for the vacatur of this Court's prior decision was that "the summary judgment record le[ft] materially disputed and unanswered when exactly th[e] [nonacquiescence] decision was made." *Id.* at 632. So, if the documents at issue appear deliberative, and the question of whether the documents are predecisional remains "materially disputed," then it would seem unfair to say that the EPA did not have even a "colorable basis in law" to assert the deliberative-process privilege. *See Davy*, 550 F.3d at 1163; *but see* ECF 88-2 at 26–27 (evidence submitted years after summary judgment indicating that, as of November 18, 2013, the EPA had already "agreed upon" a plan "not to apply th[e] [*Iowa League*] decision nationwide"). In other words, the lack of clarity in the record favors the EPA by leaving open the possibility (without allowing for a definitive ruling) that its assertion of the deliberative-process privilege was "correct as a matter of law." *Davy*, 550 F.3d at 1162.

At the same time, the Court is not convinced that the EPA should fully benefit from the fact that this timing issue remains "materially disputed and unanswered," *Hall IV*, 956 F.3d at 632, in large part because it was the EPA's persistent use of an overbroad and unsupported legal defense that helped create this obscurity in the record. While the Court (still) does not believe that the EPA acted in bad faith, *Hall III*, 315 F. Supp. 3d at 546, the Court does believe that the EPA's insistence on its "no decision rendered" defense "needlessly complicated and prolonged this litigation," *Bloomgarden v. DOJ*, 253 F. Supp. 3d 166, 174 (D.D.C. 2017). Because the EPA denied making any decision at all, "[it] submitted little to no evidence speaking directly to the timing question," leaving this Court and the D.C. Circuit with a record "about as clear as mud on when the EPA finally decided to not acquiesce." *Hall IV*, 956 F.3d at 631, 633; *see id.* at 631 ("[N]othing in the EPA's submissions pointed to a date certain for when it finally settled on a nonacquiescence position, other than 'not yet.'"); *see also, e.g.*, ECF 54-1 ¶ 5 ("I further confirm that EPA has not, to date, decided whether and to what extent to follow *Iowa League* outside the Eighth Circuit[.]"). By the time the EPA accepted on appeal that it had made a nonacquiescence decision, the record could not establish *when*. That ambiguity left this Court in need of additional arguments and evidence, which it requested, more than *five years* after H&A filed its complaint. July 14, 2020 Minute Order; ECF 1 (dated July 6, 2015).

Without a doubt, the question of when the EPA "made" or "adopted" its nonacquiescence decision is complicated. *Hall III*, 315 F. Supp. 3d at 534. Even though it is now undisputed that this critical moment must be no later than November 19, 2013, the materials in this case "offer up a buffet of different dates by which the nonacquiescence decision might have been adopted." *Hall IV*, 956 F.3d at 631. Yet no one—not this Court, the Court of Appeals, H&A, nor (eventually) the EPA—believed that "never" was on the menu. And although the equivocal record of this case

could support a finding that most of the documents withheld really were "predecisional," it would be unjust to afford the EPA the full benefit of an ambiguity to which the Agency's own erroneous legal position contributed, especially given the "asymmetrical distribution of knowledge" in FOIA cases whereby "the agency alone possesses, reviews, discloses, and withholds the subject matter of the request." *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006); *see U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) ("[T]he strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents."). Cognizant of the possibility that the EPA was correct to withhold all but one of its documents under Exemption 5, but also mindful that part of the reason this cannot be confirmed is due to the EPA's years of clinging to an erroneous legal defense, the Court finds that factor four weighs in favor of awarding fees, even if only slightly.

*   *   *

"[W]hen the four factors point in different directions, the district court has very broad discretion [as to] how to balance the factors and whether to award or deny fees." *Morley*, 894 F.3d at 396. When exercising that discretion, this Court "must be careful not to give any particular factor dispositive weight" and should ensure that any fee determination is in furtherance of "the fundamental purpose of section 552(a)(4)(E) to facilitate citizen access to the courts to vindicate their statutory rights." *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 714–15 (D.C. Cir. 1977).

On balance, H&A is entitled to fees. First, factors one through three tend to nullify each other. H&A's FOIA request sought documents that had the potential to clarify a federal agency's position on a matter of nationwide environmental and economic concern, but this request was motivated by H&A's private and commercial interests. Regarding factor four, the EPA was

reasonable in a subset of its withholdings, but its reliance on a somewhat inscrutable defense that unnecessarily complicated this litigation slightly tips this factor in favor of H&A. Considering the four entitlement factors and the circumstances of this case holistically, the Court finds that fees are warranted.

### C.  Calculating Reasonable Fees and Costs

The Court next considers the appropriate amount of fees to award. Determining the appropriate amount of attorney's fees under FOIA is "left to the traditional equitable discretion of the courts." *Fenster*, 617 F.2d at 742. "The usual method of calculating reasonable attorney's fees is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee." *Bd. of Trs. of the Hotel & Rest. Emps. Loc. 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998). The party seeking fees bears the burden of proving the reasonableness of both the hourly rate and hours requested. *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970–71 (D.C. Cir. 2004). To that end, the fee applicant must provide "contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F. 2d 1319, 1327 (D.C. Cir. 1982).

To ensure a fee award is reasonable, proportionate, and fair, this Court retains broad discretion to adjust the award "based on other relevant factors." *Am. Oversight v. DOJ*, 375 F. Supp. 3d 50, 69 (D.D.C. 2019). In exercising this discretion, the Court should "assess the award in the context of the entire case, including the reasonableness of the fee petition itself." *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 282 F. Supp. 3d 203, 213 (D.D.C. 2017), *aff'd*, 735 Fed. App'x 733 (D.C. Cir. 2018). In fact, the D.C. Circuit and many other sister circuits "have held, in several different statutory contexts, that a court may punish an intolerably excessive fee request by denying any award at all." *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 957 (D.C. Cir. 2017) (Henderson, J., concurring) (collecting cases from the First, Fourth, Fifth,

Seventh, and D.C. Circuits). While a total denial of fees "is a stringent sanction, to be reserved for only the most severe of situations," *Jordan v. DOJ*, 691 F.2d 514, 518 (D.C. Cir. 1982), the caselaw makes clear that "[s]teep overbilling ought to come at a steep price." *Baylor*, 857 F.3d at 958, 960 (Henderson, J., concurring).

### 1. *Reasonableness of Hourly Rates*

The Court concludes that the appropriate rates for purposes of calculating H&A's award are those in the United States Attorney's Office (USAO) Matrix, which reflects the market rates for legal services in the District of Columbia according to "data for all types of lawyers . . . from the entire metropolitan area." *DL v. District of Columbia*, 924 F.3d 585, 587 (D.C. Cir. 2019).

To establish the reasonableness of a requested hourly rate, a fee applicant must submit, and a district court must consider, evidence regarding: "(1) the attorney's billing practices, (2) the attorney's skill, experience, and reputation, and (3) the prevailing market rates in the relevant community." *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015) (cleaned up). Determining the prevailing market rate is often an "inherently difficult" task, which is why the fee applicant is expected to "produce satisfactory evidence—*in addition to* the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). Fee matrices, although "somewhat crude," provide a useful starting point in calculating the prevailing market rate, *id.* at 101—but, in general, fee applicants should supplement matrices with "surveys to update the[m]; affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases; and evidence of recent fees awarded by the courts or through settlement to attorneys with comparable qualifications handling similar cases," *Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995).

Because attorneys' actual billing practices are a key component of this inquiry, the Court must scrutinize attorneys' requests for "rates which are greater than those they normally charge," to ensure that FOIA's fee-shifting provision is not exploited to "subsidize attorneys who charge below-market rates because they cannot command anything more." *Id.* at 1107–08; *see also Mattachine Soc'y of Wash., DC v. DOJ*, 406 F. Supp. 3d 64, 70 (D.D.C. 2019) ("[T]here is no better indication of what the market will bear than what the lawyer in fact charges for his [or her] services."). But to avoid punishing attorneys who lower their rates to serve the public, attorneys may receive market rates higher than the standard rates they charge (if they have standard rates at all) so long as they submit "evidence that they charge reduced rates for public-spirited or non-economic reasons." *Covington*, 57 F.3d at 1107–08; *see also Blum v. Stenson*, 465 U.S. 886, 895 (1984) ("[R]easonable fees . . . are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel.").

The Parties dispute which rates should apply. H&A argues that it is entitled to the Legal Services Index (LSI) *Laffey* Matrix, a schedule of prevailing rates for lawyers who practice "complex federal litigation" in the District of Columbia, updated each year based on the LSI Index of the Bureau of Labor Statistics to adjust for inflation in the costs of legal services. *Eley*, 793 F.3d at 101–02; *see* ECF 88-1 at 29. In the alternative, H&A suggests applying the USAO Matrix, which has lower fees based on the rates for all types of lawyers in the District of Columbia, not just those who practice complex federal litigation. *DL*, 924 F.3d at 587; ECF 101 at 25. The EPA argues that the Court should instead use H&A's actual billing rate because "Plaintiff has utterly

23

failed to meet its burden" in establishing the appropriateness of either fee matrix. ECF 93 at 26, 34.[3]

The Court declines to adopt the EPA's suggestion to "use Plaintiff's purported actual billing rate." *Id.* To be sure, H&A requests rates higher than those it typically charges its clients, *see supra* note 5, but the firm also asserts that it charges lower-than-market rates because it "predominately represents not-for-profit municipalities across the country, many of which have limited fiscal resources." ECF 88-1 at 29, ECF 88-3 ¶ 16. The EPA does not respond to H&A's contention that its lower rates are "public spirited," and this Court finds no reason to discredit H&A on this point.

The Court also will not, despite H&A's request, apply the LSI *Laffey* Matrix. Even if the Court agreed with H&A that this federal litigation was complex, which would suggest that the LSI *Laffey* Matrix should apply, *see DL*, 924 at 594, the Court finds that H&A has not provided sufficient evidence to establish that its attorneys possess the "comparable skill, experience, and reputation" of the specialists who command higher rates for such matters in Washington, D.C., *see Eley*, 793 F.3d at 104. H&A asks this Court to issue an order compelling the EPA to compensate the firm at rates nearly twice as high as those actually charged, yet the firm relies on affidavits from only *one* of its eight timekeepers in this case (six attorneys, two paralegals/staff members). ECF 88-3; ECF 101-1. *Compare* ECF 93 at 34, *with* ECF 88-2 at 48. Yet it is H&A's burden as a fee requester to "produce satisfactory evidence [] *in addition to* the attorney's own affidavits."

---

[3] For illustration, as of June 15, 2015, H&A's lead attorney John Hall had practiced law for 30 years and charged his clients **$385 per hour**. *See* ECF 101-1 at 20 (listing seniority of H&A attorneys); ECF 88-2 at 58 (timeslips listing rate for "John"). Under the USAO Matrix, Hall's "market" rate was **$568 per hour.** *See* USAO Attorney's Fees Matrix – 2015–2021, DEP'T OF JUSTICE, https://www.justice.gov/file/1461316/download. And under *Laffey*, Hall could have charged a "market" rate of **$796 per hour.** *See* LSI-Laffey Matrix, *available at* http://www.laffeymatrix.com/see.html.

*Urban Air Initiative, Inc. v. EPA*, 442 F. Supp. 3d 301, 321–22 (D.D.C. 2020).[4] Mr. Hall's affidavits contain information about his legal background, but they provide nothing more than the graduation years of the other attorneys who worked on this matter. ECF 88-3 ¶¶ 1–3; ECF 101-1 ¶¶ 18–19. This leaves the Court with little to no evidence regarding the relevant "experience, competence, and marketability" of the remaining timekeepers, *Covington*, 57 F.3d at 1108, whose work accounts for roughly 80% of the hours for which H&A seeks compensation, ECF 88-2 at 48. These affidavits, without more, are insufficient to carry H&A's burden to prove that *Laffey* rates are appropriate.

Moreover, portions of Mr. Hall's affidavit undermine H&A's request for *Laffey* rates. To be sure, the Court recognizes that H&A is an established firm with expertise in complex Clean Water Act (CWA) issues and credits Mr. Hall as a veteran attorney with over three decades of legal practice. ECF 88-3 ¶¶ 1–2. The main thrust of H&A's practice, however, seems to relate to the CWA, not complex FOIA issues. Mr. Hall's affidavits state that, while his firm has now litigated six FOIA actions, "[t]he majority of the . . . FOIA actions involved EPA's failure to provide non-exempt documents within the statutory time requirements," making this only "the second case that extensively involved the legitimacy of FOIA exemptions claimed by the EPA." ECF 88-3 ¶ 3. This is telling, as not all FOIA litigation constitutes "complex federal litigation," *see Poulsen v. DHS*, No. 13-CV-498, 2016 WL 1091060, at *6 (D.D.C. Mar. 21, 2016), and the current record does not convince the Court that H&A's past disputes over "statutory time requirements" qualify. In other words, the evidence H&A provided does not allow the Court to

---

[4] Appended to its reply brief, H&A submits a second declaration from Mr. Hall in which he refers to an affidavit submitted by an economist in an unrelated case, in which the economist opined "that the LSI *Laffey* Matrix is a better reflection of the prevailing market rates for complex federal litigation in Washington, D.C., than the USAO Matrix 2015–2017." ECF 101-2 at 112. Yet this statement does not make up for H&A's failure to provide sufficient information about the skill and experience of the attorneys who worked on this case.

determine whether the "significant amount of research and additional factual development" required by this litigation is attributable to the complexity of the case or, alternatively, to H&A's limited experience in this area at the time it litigated this case. ECF 88-3 ¶ 3.

The Court again emphasizes that it recognizes Mr. Hall's experience and qualifications as a CWA attorney, but it is H&A's burden "to show that the LSI *Laffey* Matrix should be used" for all of the timekeepers for whom he seeks compensation—and H&A fails to carry that burden on the current record. *Elec. Privacy Info. Ctr. v. DHS*, 218 F. Supp. 3d 27, 48 (D.D.C. 2016). When fee requesters do not demonstrate entitlement to rates of those "engaged in complex litigation in the 'big firm' context," *Eley*, 793 F.3d at 103, courts in this District tend to apply the USAO Fee Matrix, *see, e.g.*, *12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, No. 17-CV-2000, 2020 WL 7248347, at *6 (D.D.C. Dec. 9, 2020). H&A itself is no doubt aware of this. *See Hall I*, 2011 WL 13373978, at *6; *Hall & Assocs. v. EPA* (*Hall II*), No. 15-CV-286, 2016 WL 10746643, at *6 (D.D.C. Mar. 7, 2016); ECF 101-2 at 157.[5]

The Court will follow other courts in this District and award H&A hourly rates according to the USAO Fee Matrix. Given the limited information that the Court has regarding H&A's attorneys, the Court finds that these rates reflect the appropriate market for metropolitan attorneys comparable to those at H&A as well as a reasonable (and significant) upward adjustment from H&A's standard rates for clients with limited fiscal resources. With the appropriate hourly rate set, the Court next considers the reasonableness of the hours expended.

---

[5] Prior to 2015, the USAO Matrix used the *Laffey* fee schedule from 1983, but updated based on the local consumer price index rather than the LSI. *See Hall I*, 2011 WL 13373978, at *5; USAO Attorney's Fees Matrix – 2015–2021, DEP'T OF JUSTICE, https://www.justice.gov/file/1461316/download.

2. *Reasonableness of Hours Expended*

H&A seeks compensation for 2,284.1 hours expended prior to the dismissal of the case and 674.98 hours expended for the present motion for fees. *See* ECF 88-2 at 48; ECF 101-2 at 179. Excepting two motions filed in this Court, H&A defends all its litigation efforts as "necessary and reasonable" and "a model of efficiency," but still accepts that "inefficiencies are inherent in all litigation" and that some reduction may be warranted. ECF 101 at 27, 30, 34. The EPA argues that H&A engaged in "excessive, duplicative, and otherwise unnecessary" conduct and that its billing reflects "numerous charges for unsuccessful claims and non-productive activities." ECF 93 at 26, 31. The EPA asserts that, if at all, H&A should be credited for no more than 180 hours prior to dismissal and 35 hours for this fees dispute. ECF 93 at 34.

Both Parties overstate their position. The Court retains discretion to reduce an award where a fee applicant requests compensation for "hours that are excessive, redundant, or otherwise unnecessary." *See Hensley*, 461 U.S. at 434. The same is true regarding hours spent on claims or motions that are unsuccessful. *See id.* at 435. That said, most litigants are expected to "lose some skirmishes on the way to winning the war," which is why "losing" in some filings over the course of the litigation does not automatically mean that the prevailing party cannot be compensated for those efforts. *Air Trans. Ass'n of Canada v. FAA*, 156 F.3d 1329, 1335 (D.C. Cir. 1998). Moreover, the allocation of fees is "not an exact science," and it is common for courts to make broad, across-the-board reductions in awards based on the unique circumstances of the case at hand. *See, e.g.*, *Ralph Hoar & Assocs. v. NHTSA*, 985 F. Supp. 1, 11 (D.D.C. 1997) (applying "a one-third reduction" to a requested award); *EPIC v. DHS*, 999 F. Supp. 2d 61, 73–77 (D.D.C. 2013) (deducting "40% of [requested] time"); *Piper v. DOJ*, 339 F. Supp. 2d 13, 24 (D.D.C. 2004) (reducing attorney's fees for various motions "by 50%"); *Hall I*, 2011 WL 13373978, at *6–7

(applying a "reduction of 10% for inexperience"); *Hall II*, 2016 WL 10746643, at *6–7 (reducing award "by 21.9%").

This litigation suffered from more than "some small forms of inefficiencies." ECF 101 at 34. First, while the Court is sympathetic to the notion that even unsuccessful motions may contribute to a litigant's ultimate victory, the number of denied or withdrawn motions filed by H&A throughout this litigation is relevant to the Court's consideration. The EPA identifies nearly two dozen, pointing to several disputes over extensions of time, discovery, motions to amend, and sanctions. *See* ECF 93 at 31–32. Some of these repeated filings may have, as H&A asserts, "served to keep this litigation on track," ECF 101 at 22, but the Court cannot agree that the dozens of (sometimes inexplicably voluminous) filings served a useful purpose. For example, after this Court ruled on summary judgment, H&A filed a Motion to Withdraw the Court's Opinion in a brief longer than its original motion for summary judgment. *Compare* ECF 73, *with* ECF 10. That motion was denied via minute order the following day. June 18, 2018 Minute Order. As another example, H&A filed a motion for discovery after remand, ECF 94, but later withdrew that motion. ECF 98. As part of its notice of withdrawal, H&A submitted 11 pages of briefing and 79 pages of exhibits, purportedly in support of an *unopposed* request for additional pages in its fees reply brief. ECF 98 at 9; ECF 98-1 at 1–79. The Court is unwilling to compensate H&A for these activities.

Second, the Court agrees with the EPA that H&A's billing sheet reflects a large degree of overstaffing and questionable resource allocation. *See* ECF 93 at 28, 31. H&A insists that it "attempted to avoid significant input by multiple senior attorneys to prevent duplicative efforts," ECF 101-1 at 20, but H&A's evidentiary submissions suggest otherwise. According to H&A's tables of hours and fees, June 1, 2015 through May 31, 2017 was the most expensive two-year period for this litigation. ECF 88-2 at 49. Of the five attorneys who billed to this matter during this

period, three had over thirty years of experience. ECF 88-2 at 49; ECF 101-1 ¶ 19. Consequently, of the $561,336.38 H&A seeks for this period, nearly $280,000 (*i.e.*, roughly half) is attributable to those same seasoned lawyers. ECF 88-2 at 49; ECF 101-1 ¶ 19. Mr. Hall's affidavits provide no explanation as to why H&A believed it was necessary to staff six attorneys to litigate this matter or any detail sufficient to support its decision to allocate work among its lawyers. The Court finds no support for Mr. Hall's opinion that this case—which primarily involved litigation over a single exemption and a handful of documents—"was far more complex in scope, legal issues, and factual development than any other FOIA case reported in the D.C. Circuit to date." ECF 88-3 ¶ 17.

Finally, the Court finds that H&A has not demonstrated that the thousands of hours spent on this litigation were all reasonably necessary. For example, the Court is puzzled as to how, after investing 644 hours during the first round of summary judgment briefing, it was reasonably necessary for H&A to spend another 512 hours for its revised briefing, resulting in a total of 1,156 hours just to get through summary judgment.[6] *See* ECF 88-2 at 48 (listing hours spent per motion). While H&A may have refined its legal arguments based on "newly disclosed Agency documents," ECF 44-1 at 20, its revised brief still retained large, virtually unedited swaths of the prior one. *Compare* ECF 10 at 1–14, *with* ECF 44-1 at 1–16. The Court also looks somewhat askance at the 736 hours spent on appeal, where the primary issue before the D.C. Circuit was the same issue H&A had (presumably) already researched and argued below: when did the EPA make its nonacquiescence decision? Defending against essentially all claims of inefficiency, H&A states that the firm "had to review hundreds of pages of agency records" and thus "[t]his matter was akin to litigating an illegal rulemaking case under the Administrative Procedure[] Act." ECF 88-3 ¶ 17;

---

[6] For reference, using a 40-hour work week as the standard work week, this is the equivalent of approximately 29 weeks—more than half a year—of nonstop, undivided work on a single case.

ECF 101-1 ¶ 27(a). Yet to invoke the APA as a comparator and then complain of a record with "hundreds of pages" is to make a mountain of a molehill: actual APA cases regularly amass administrative records of *thousands* if not *tens of thousands* of pages. *See, e.g.*, *Blue Ocean Inst. v. Gutierrez*, 503 F. Supp. 2d 366, 368 (D.D.C. 2007) ("[T]he administrative record[] consist[s] of over 600 documents and thousands of pages."); *Stand Up for Cal.! v. U.S. Dep't of Interior*, 204 F. Supp. 3d 212, 227 n.2 (D.D.C. 2016) ("The over 42,000-page administrative record ('AR') in this case was filed in four parts.").

H&A proposes, without elaboration or supporting evidence, that a 10% reduction may be reasonable, ECF 101 at 34, but the Court finds that a far greater reduction is warranted given the extent of H&A's overreach. The magnitude of Plaintiff's request is, quite frankly, difficult for this Court to comprehend. H&A has nonetheless opted to defend almost every one of the more than 2,200 hours it expended to litigate this case, notwithstanding the over-filing, over-staffing, and over-billing that jumps out from the record of this case. To the extent H&A has made any effort to discount its hours for the purpose of its fee request, those efforts strike the Court as both negligible and potentially ineffective. *Compare* ECF 88-3 ¶ 18 ("I have reviewed the time entries and undertook reasonable efforts to exclude any time expended on the Motion to Strike the Nagle Declaration . . . ."), *with* ECF 88-2 at 72 (time entry no. 125523 for 3.5 hours billed to "Continue to Draft Reply to Motion to Strike (Nagle Declaration)"). To H&A's credit, it has provided timeslips and other evidence describing where these figures come from, but it has not submitted evidence or explanation sufficient to convince the Court that these figures are reasonable.

In determining the proper reduction to apply, the Court is mindful that it is well within its discretion to "deny in its entirety a request for an 'outrageously unreasonable' amount." *Env'tl Def. Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993). But the Court does not find that this

is one of the "very limited circumstances" in which an outright denial of fees is warranted, such as when a requester "declines to proffer any substantiation" for its fees at all, or when an application is "manifestly filed in bad faith." *Jordan*, 691 F.2d at 518. As discussed above, it may be that the remarkable volume of efforts expended by H&A throughout this litigation is attributable in part to H&A's limited experience dealing with FOIA litigation at the time it litigated this case. The Court also cannot ignore the fact that H&A did achieve some success in this litigation: it gained disclosure of some documents at summary judgment, *Hall III*, 315 F. Supp. 3d at 533, successfully appealed to the D.C. Circuit, *Hall IV*, 956 F.3d at 634, and eventually acquired all documents the EPA had withheld. August 4, 2020 Minute Order. In these circumstances, "the lesser sanction of a large fee reduction [is] sufficient." *Baylor*, 282 F. Supp. 3d at 214.

To first adjust H&A's request to a reasonable level, the Court will apply broad reductions in hours to account for the serious inefficiencies of this case: a 20% reduction for miscellaneous unsuccessful and unproductive filings, a 10% reduction for overstaffing, and a 30% reduction for duplicative hours spent on identical or similar issues. This 60% total reduction would result in a fees award of $353,417.36,[7] a figure that aligns with awards in other lengthy FOIA cases. *See, e.g.*, *Hall v. CIA*, 115 F. Supp. 3d 24, 35 (D.D.C. 2015) (awarding $414,478.40 for over ten years of litigation involving cross motions for summary judgment); *Schwartz v. DEA*, No. 13-CV-5004, 2019 WL 1299192, at *12 (E.D.N.Y. Mar. 1, 2019) (awarding $557,334.38 for five years of litigation involving two rounds of summary judgment briefing and an appeal to the Second Circuit); ECF 101-2 at 156–63 (collecting cases). The Court will take one step further, however, finding it necessary to "award[] a fee below what a 'reasonable' fee would have been in order to

---

[7] The Court notes that this figure also includes H&A's hours expended on this fees application, as limited by the Court's ruling on "fees-on-fees" below.

discourage fee petitioners from submitting an excessive request." *Env't Def. Fund, Inc.*, 1 F.3d at 1258. Once again emphasizing that a fee requester may receive *nothing* when they submit exorbitant fee applications, the Court will instead deduct an additional 25% from H&A's hours to deter future unreasonable requests and to account for H&A's "manifest private interest in this case." *Piper*, 339 F. Supp. 2d at 25; *see Baylor*, 282 F. Supp. 3d at 206–07 (awarding $17,000 of a $220,712.00 fee request, roughly a 92% total reduction). In total, H&A will have its hours cut by 85%. Overall, this significant reduction accounts for the fact that: the factors supporting H&A's entitlement to fees only slightly tipped in its favor; H&A had significant private and commercial interest in pursuing this litigation; it submitted insufficient evidence to support its staffing decisions or to explain the reason it spent the hours it did litigating the same issues; it over-litigated the case without explanation for its strategy in supporting affidavits; it did not sufficiently explain reductions it applied in the exercise of its billing judgment; and the breadth of its request.

Moving next to H&A's hours litigating this fees dispute, the Court finds it beyond the pale that H&A invested more hours to litigate its pending motion for fees (674.98 hours) than it did for either round of summary judgment (644.15 and 512.1 hours). ECF 88-2 at 48; ECF 101-2 at 179; *see also Elec. Privacy Info. Ctr.*, 218 F. Supp. 3d at 52 ("A fees on fees award that is roughly equivalent to the amount of time [plaintiff] spent on summary judgment would be excessive."). This Court has a duty to scrutinize all "fees-on-fees" requests to ensure that the amount is reasonable and "does not represent a windfall for the attorneys." *Urban Air Initiative*, 442 F. Supp. 3d at 326. In fees litigation where a reply brief "took almost as many hours—and therefore cost almost as much—as the application," this Court reduced a fees-on-fees award by over two-thirds. *See id.* at 326–27. Here, H&A spent *more* hours on its "Attorney Fee Reply" than its initial fee application. *Compare* ECF 88-2 at 49 (316.28 hours for application), *with* ECF 101-2 at 164–79

(358.70 hours for reply). The Court is sensitive to the fact that fee entitlement analysis can be bound up in the complexity of the case itself (*e.g.*, arguing whether the EPA's withholding was "reasonable"), but still finds that granting H&A's request for fees-on-fees in this case could not be anything but a windfall. Given the remarkable number of hours H&A expended, the Court will exclude from consideration the hours H&A spent on its "Attorney Fee Reply." The Court will then reduce the remaining hours proportionate to the pre-fees reduction of hours (*i.e.*, by 85%). *See Citizens for Responsibility & Ethics in Wash. v. DOJ*, 142 F. Supp. 3d 1, 23 (D.D.C. 2015) ("Fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation." (quoting *Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 163 n.10 (1990))).

In sum, after excluding excessive hours spent on fees reply briefing, the Court finds it is appropriate to reduce H&A's remaining hours by a total of 85%. The EPA would have this Court go even further and credit H&A for only 215 hours for this entire litigation. ECF 93 at 34. This is equivalent to suggesting that H&A should have allocated no more than forty-three hours per year, over five years, to a case that demanded multiple rounds of cross motions for summary judgment, an appeal before the D.C. Circuit, and further briefing on remand. The Court cannot agree with the EPA's proposition. Instead, the Court finds that a 60% reduction across the board reasonably and proportionally accounts for any inefficiencies, unsuccessful motions, or excessive hours billed, among the other factors articulated above, and that an additional 25% reduction is sufficient to remind H&A (and other fee requesters) to file fee requests more thoughtfully.

### 3. *Final Award of Fees & Costs*

To recap, the Court will award H&A fees using the USAO Fee Matrix. The Court will also reduce H&A's hours by 85%. These modifications result in a fees award of $132,531.51.[8] With

---

[8] The detailed calculations for this award can be found in Appendix A.

regard to costs, H&A requests $18,566.81 for photocopies, Lexis Nexis, telephone calls, and filing fees, all of which are recoverable litigation expenses. ECF 88-1 at 32; ECF 88-2 at 51; *see Nw. Coal. for Alts. to Pesticides v. Browner*, 965 F. Supp. 59, 66 (D.D.C. 1997) (awarding $4,216.98 for "court costs, transportation, telephone calls, photocopying . . . and other miscellaneous charges"). Because the EPA has not challenged H&A's request for costs, and finding no basis to reject H&A's costs as unreasonable, the Court will add these expenses to the final award. *See Hall II*, 2016 WL 10746643, at *7 n.9. H&A shall therefore be awarded fees and costs in the total amount of $151,098.32.

## IV.   CONCLUSION

For the foregoing reasons, H&A's motion is **GRANTED IN PART** and **DENIED IN PART.** The EPA will be ordered to pay $151,098.32 in total attorneys' fees and costs.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: September 3, 2024

## APPENDIX A

### H&A Attorney Experience (Years Since Graduation)[1]

|  | 6/1/2014 | 6/1/2015 | 6/1/2016 | 6/1/2017 | 6/1/2018 | 6/1/2019 | 6/1/2020 |
|---|---|---|---|---|---|---|---|
| **Hall ('84)** | 30 | 31 | 32 | 33 | 34 | 35 | 36 |
| **Rosenman ('06)** | 8 | 9 | 10 | 11 |  |  |  |
| **Risetto ('80)** |  | 35 | 36 |  |  |  |  |
| **Carlesco ('14)** |  | 1 | 2 |  |  |  |  |
| **Cohen ('80)** |  | 35 | 36 | 37 | 38 | 39 | 40 |
| **Thomas ('17)** |  |  |  | 0 | 1 | 2 | 3 |

### USAO Rates[2]

|  | 6/1/2014 | 6/1/2015 | 6/1/2016 | 6/1/2017 | 6/1/2018 | 6/1/2019 | 6/1/2020 |
|---|---|---|---|---|---|---|---|
| **Hall** | 520 | 568 | 581 | 602 | 613 | 637 | 665 |
| **Rosenman** | 370 | 386 | 395 | 483 |  |  |  |
| **Risetto** |  | 568 | 581 |  |  |  |  |
| **Carlesco** |  | 284 | 322 |  |  |  |  |
| **Cohen** |  | 568 | 581 | 602 | 613 | 637 | 665 |
| **Thomas** |  |  |  | 302 | 307 | 353 | 369 |
| **Kirby (admin)[3]** |  |  |  | 164 | 166 |  |  |
| **Admin** |  |  |  |  |  |  | 180 |

### Hours Expended[4]

|  | 6/1/2014 | 6/1/2015 | 6/1/2016 | 6/1/2017 | 6/1/2018 | 6/1/2019 | 6/1/2020 |
|---|---|---|---|---|---|---|---|
| **Hall** | 0.5 | 124.19 | 80.94 | 54.32 | 117.04 | 71.5 | 84.3 |
| **Rosenman** | 3.75 | 356.25 | 208 | 1 |  |  |  |
| **Risetto** |  | 78.96 | 32.91 |  |  |  |  |
| **Carlesco** |  | 81.75 | 70.91 |  |  |  |  |
| **Cohen** |  | 10 | 17 | 22.35 | 46.3 | 13 | 1.95 |

[1] The Court relies only on graduation year of each attorney as listed in Mr. Hall's affidavit, *see* ECF 101-1 at 20, which is why the Court's "years since graduation" for Carlesco and Thomas have been adjusted for accuracy. For example, because Thomas graduated in (presumably around June) of 2017, from June 2017 through June 2018 he had 0 years of experience, not 1 year of experience. *Contra* ECF 101-1 at 20. This error was identified for Carlesco and Thomas only and corrected accordingly.

[2] USAO Attorney's Fees Matrix – 2015–2021, DEP'T OF JUSTICE, https://www.justice.gov/file/1461316/download; Laffey Matrix – 2014-2015, DEP'T OF JUSTICE, https://www.justice.gov/sites/default/files/usao-dc/legacy/2014/07/14/Laffey%20Matrix_2014-2015.pdf.

[3] *See* ECF 88-2 at 48 (citing LSI-Laffey Matrix, *available at* http://www.laffeymatrix.com/see.html). H&A did not identify Kirby's role, but the Court understands them to be a paralegal/law clerk based on H&A's requested rates.

[4] ECF 88-2 at 48–49.

| | | | | 160.16 | 315.5 | 308.55 | 247.75 |
|---|---|---|---|---|---|---|---|
| **Thomas** | | | | 160.16 | 315.5 | 308.55 | 247.75 |
| **Kirby (admin)** | | | | 4.25 | 35.5 | | |
| **Admin** | | | | | | | 51.75 |

### Hours Credited (85% Reduction)

| | 6/1/2014 | 6/1/2015 | 6/1/2016 | 6/1/2017 | 6/1/2018 | 6/1/2019 | 6/1/2020 |
|---|---|---|---|---|---|---|---|
| **Hall** | 0.075 | 18.6285 | 12.141 | 8.148 | 17.556 | 10.725 | 12.645 |
| **Rosenman** | 0.563 | 53.4375 | 31.2 | 0.15 | | | |
| **Risetto** | | 11.844 | 4.9365 | | | | |
| **Carlesco** | | 12.2625 | 10.6365 | | | | |
| **Cohen** | | 1.5 | 2.55 | 3.35 | 6.95 | 1.95 | 0.29 |
| **Thomas** | | | | 24.02 | 47.33 | 46.28 | 37.16 |
| **Kirby (admin)** | | | | 0.64 | 5.33 | | |
| **Admin** | | | | | | | 7.76 |

### Fees Awarded (Hours Credited x USAO Rates)

| | 6/1/2014 | 6/1/2015 | 6/1/2016 | 6/1/2017 | 6/1/2018 | 6/1/2019 | 6/1/2020 |
|---|---|---|---|---|---|---|---|
| **Hall** | 39 | 10580.988 | 7053.921 | 4905.096 | 10761.828 | 6831.825 | 8408.925 |
| **Rosenman** | 208.125 | 20626.875 | 12324 | 72.45 | | | |
| **Risetto** | | 6727.392 | 2868.1065 | | | | |
| **Carlesco** | | 3482.55 | 3424.953 | | | | |
| **Cohen** | | 852 | 1481.55 | 2018.205 | 4257.285 | 1242.15 | 194.5125 |
| **Thomas** | | | | 7255.248 | 14528.775 | | |
| **Kirby (admin)** | | | | 104.55 | 883.95 | | |
| **Admin** | | | | | | | 1397.25 |
| | | | | | | | |
| **TOTAL** | $132,531.51 | | | | | | |

### Total Award

| | |
|---|---|
| **Fees Awarded** | $132,531.51 |
| **Costs Awarded** | $18,566.81 |
| **TOTAL** | **$151,098.32** |

A-2